**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ) | |
| **GEORGE M. KELLY and HEIDI KELLY,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | **08-40159-FDS** |
| **PERFORMANCE CREDIT CORPORATION** ) | |
| **(as successor in interest to Encore Credit** ) | |
| **Corporation), DEUTSCHE BANK NATIONAL** ) | |
| **TRUST COMPANY, N.A., as Trustee,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, J.**

This is a civil action arising out of alleged violations of the Truth in Lending Act, 15

U.S.C. §§ 1601-1667f ("TILA") and its implementing regulation, Federal Reserve Board

Regulation Z, 12 C.F.R. § 226.  Plaintiffs George and Heidi Kelly obtained a home mortgage

from Encore Credit Corporation in August 2005.  At the time, Encore provided the Kellys with a

notice advising them of their right to cancel the transaction within a three-day cooling-off period,

as required by TILA.  Beginning nearly three years later, the Kellys sought to rescind the

transaction, contending that the rescission period had been extended due to a defective notice that

improperly stated the deadline on which the rescission period expired.

Defendant Performance Credit Corporation, the successor in interest to Encore, has

moved to dismiss the complaint for failure to state a claim upon which relief can be granted.  For

the reasons set forth below, the motion will be granted.

**I.**      **Background**

The Court accepts as true all well-pleaded facts in the complaint.

On August 26, 2005, George and Heidi Kelly obtained a loan from Encore Credit

Corporation for the purpose of debt consolidation.  The loan was secured by a mortgage on their

residence.

In connection with the loan transaction, Encore provided plaintiff a form document

entitled "Notice of Right to Cancel" at the closing.  The form provided as follows:

> You have a legal right under federal law to cancel this transaction, without cost,
> within three business days from whichever of the following events occurs last:
>
> 1. The date of the transaction, which is AUGUST 26, 2005; or
> 2. The date you received your Truth in Lending disclosures; or
> 3. The date you received this notice of your right to cancel.

(Compl. at Ex. 1.)[1]

In addition, the form contained a space where a possible alternate expiration date for the

rescission period could be filled in:  "If you cancel by mail or telegram, you must send the notice

no later than midnight of _____ [*sic*] (or midnight of the third business day following the

latest of the three events listed above).  If you send or deliver your written notice to cancel some

other way, it must be delivered to the above address no later than that time."  (*Id.*).

On August 7, 2008, nearly three years later, plaintiffs sought to exercise the right to

rescind the loan for violations of TILA and the state statutory equivalent, the Massachusetts

---

[1]   "The Notice itself is annexed to the [] complaint and, therefore, is deemed fair game on a motion to dismiss."  *Palmer v. Champion Mortgage*, 465 F.3d 24, 28 (1st Cir. 2006); *see also Carye v. Long Beach Mortgage Co.*, 470 F. Supp. 2d 3, 9 n.4 (D. Mass. 2007) ("Consideration of the Notices is appropriate in the context of this motion to dismiss.  When documents are central to a plaintiff's claims, the documents can be considered at the pleading stage.").

Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D, §§ 1-34, and 209 C.M.R.

32.00-32.34.  Although not specifically alleged in the complaint, apparently the loan was not

rescinded.[2]

The complaint as amended seeks rescission of the mortgage transaction and attorney's

fees, expenses, and costs.  It also seeks statutory damages and attorney's fees and litigation

expenses and costs on behalf a class of borrowers who obtained residential mortgage loans from

Encore through refinancing of a principal residence located in Massachusetts on or after August

25, 2004, where the Notice of Right to Cancel failed to include a precise deadline to rescind.[3]

## II.    Subject Matter Jurisdiction

Although TILA is a federal statute, there is some doubt as to whether there is a federal

right to sue for rescission in this case, and therefore whether there is subject matter jurisdiction

over this claim.  This is because TILA and its implementing regulations exempt credit transactions

subject to Massachusetts law from the provisions relating to the right to rescind.  *See Belini v.*

*Washington Mutual Bank*, 412 F.3d 17, 19 (1st Cir. 2005) (citing 12 C.F.R. § 226.29; 12 C.F.R.

Pt. 226, Supp. I ("Credit transactions subject to the Massachusetts Truth in Lending Act are

exempt from chapters 2 and 4 of the Federal Act.")).  Whether such a federal right to sue exists

has been addressed, but left open, by the First Circuit.  *See Belini*, 412 F.3d at 19 ("[I]t is much

murkier, given the current drafting of these regulations, whether a debtor's right to sue for

---

[2]  Plaintiffs sent rescission demand letters to Encore, with a copy to Performance (on August 7, 2008),
Select Portfolio Servicing, Inc. (on August 8, 2008), and Deutsche Bank National Trust (on October 1, 2008).
(Compl. at Exs. 2, 3, and 4).  In its memorandum in support of the motion to dismiss, Performance states that it
did not rescind the loan.  (Def. Mem. at 3).

[3]  The amended complaint also named Deutsche Bank as a defendant on the grounds that "it holds legal
title to Plaintiff's loan as trustee" and is therefore "an indispensable and necessary party."  (Compl. ¶ 11).
Deutsche Bank has not moved to dismiss.

rescission under federal law is preserved.  Similarly, the question of how to measure the amount in controversy in an action for rescission is difficult.").[4]

However, as in *Belini*, this Court need not resolve the issue, as plaintiff has asserted both a claim based on a right to rescind and a claim for statutory damages on behalf of the class.  *See Belini*, 412 F.3d at 19-20.[5]  "It is well established that debtors retain at least the ability to file federal suits for damages in federal court under 15 U.S.C. § 1640, regardless of the exemption."  *Id.*  Subject matter jurisdiction therefore exists in this case.

## III.   Analysis

### A.      Standard of Review

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (internal citations omitted).  Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharms.,*

---

[4]  "[W]e emphasize that the question of whether the exemption vitiates the possibility of bringing a federal claim to enforce the right of rescission raises very difficult issues of regulatory and statutory construction; the Federal Reserve regulations lack clarity on this point.  Further, this question is unlikely to be litigated often, given that there are only five states that have exemptions from parts of TILA, *see* 12 C.F.R. Pt. 226, Supp. I, and that even in these exempt states, an alternative ground for federal jurisdiction will usually exist because of the clear preservation of damages claims under section 1640."  *Belini*, 412 F.3d at 29; *see also Palmer*, 465 F.3d at 27 n.4.

[5]  Section 1640 allows damages actions against "any creditor who fails to comply with any requirement imposed under this chapter, including any requirement under [15 U.S.C. § 1635]."  15 U.S.C. § 1640(a).

*LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations, citations and original textual alterations

omitted).

      **B.**      **The Truth In Lending Act**

Congress enacted TILA to "to assure a meaningful disclosure of credit terms so that the

consumer will be able to compare more readily the various credit terms available to him and avoid

the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit

billing and credit card practices." 15 U.S.C. § 1601(a). TILA requires creditors "to disclose

clearly and accurately all the material terms of a credit transaction." *Palmer v. Champion*

*Mortgage*, 465 F.3d 24, 27 (1st Cir. 2006) (citing *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412

(1998)). It provides further protection to consumers by guaranteeing them a three-day

cooling-off period within which they may, "for any reason or for no reason," rescind certain types

of transactions. *McKenna v. First Horizon Home Loan Corp.* ("*McKenna I*"), 475 F.3d 418,

421 (1st Cir. 2007). "This three-day rescission period begins to run when the transaction is

consummated or upon delivery of notice of the consumer's right to rescind, whichever occurs

later." *Santos-Rodriguez v. Doral Mortgage Corp.*, 485 F.3d 12, 14 (1st Cir. 2007).[6] The three-

day rescission period may be extended for up to three years if the lender fails to live up to its

obligations under TILA, including any failure to give notice of the right to rescind. *See Palmer*,

465 F.3d at 27; *McKenna I*, 475 F.3d at 421.

In addition to the statute, the Board of Governors of the Federal Reserve System has

issued a regulation known as Regulation Z that governs, among other things, the disclosures that

---

    [6] "Rescission essentially restores the status quo ante; the creditor terminates its security interest and returns any monies paid by the debtor in exchange for the latter's return of all disbursed funds or property interests." *McKenna I*, 475 F.3d at 421 (citations to the statute omitted).

lenders must make to consumers.  12 C.F.R. § 226.1 *et seq*.  Regulation Z includes an appendix of

model forms for various transactions, including a model form of notice of the right to rescission.

*Santos-Rodriguez*, 485 F.3d at 14.

Regulation Z specifies as follows:  "The notice [of right to cancel] shall be on a separate

document that identifies the transaction and shall clearly and conspicuously disclose the following:

. . . The date the rescission period expires."  12 C.F.R. § 226.23(b)(1)(v).[7]  Thus, whether a

disclosure complies with TILA depends on whether it "clearly and conspicuously" discloses the

relevant date.  *See Carye v. Long Beach Mortgage Co.*, 470 F. Supp. 2d 3, 9 (D. Mass. 2007).[8]

In making that determination, "courts must evaluate the adequacy of TILA disclosures from the

vantage point of a hypothetical average consumer—a consumer who is neither particularly

sophisticated nor particularly dense."  *Palmer*, 465 F.3d at 28.  Thus, "the question [is] whether

the average consumer, looking at the Notice objectively, would find it confusing."  *Id.*  Any

subjective, or actual, confusion by the consumer is immaterial.  *See id.* (explaining that in TILA

actions courts focus "the lens of our inquiry on the text of the disclosures themselves rather than

on plaintiffs' descriptions of their subjective understandings").    TILA does not impose strict

liability for technical defects in disclosures.  "Most courts have concluded that the TILA's clear

and conspicuous standard is less demanding than a requirement of perfect notice."

---

[7]  Despite state law requirements governing the right of rescission in such transactions, the key questions here will be resolved by reference to the federal provisions.  Both parties agree that the analysis under the MCCCDA would be identical.  *See* Def. Mem. at 4 n.2; Pl. Mem. at 2 n.1; *see also McKenna I*, 475 F.3d at 422 ("Thus, even though the parties agree that the rescission claims in this case invoke the MCCCDA, they also agree that, given the congruence between the two statutes, the TILA supplies the applicable rules of decision.").

[8]  This issue presents a question of law, appropriate for determination on a motion to dismiss.  *See, e.g.*, *Gambardella v. G. Fox & Co.*, 716 F.2d 104, 113 (2d Cir. 1983) ("[Where] the sole issue is whether required disclosures have been made clearly and conspicuously, or whether additional disclosures confuse or mislead, the court may appropriately decide the plaintiff's claims as raising issues of law.").

*Santos-Rodriguez*, 485 F.3d at 17 (citing cases); *see also McKenna v. First Horizon Home Loan Corp.* ("*McKenna II*"), 537 F. Supp. 2d 284, 290 (D. Mass. 2008) (concluding "that the Notice, while not perfect, clearly and conspicuously disclosed to Plaintiffs the effects of the rescission").[9] As the *Santos-Rodriguez* court observed, "[W]e do not require perfect disclosure. The question before us is not whether the notification in [the relevant form] would have been more complete than the notification plaintiffs actually received, but only whether the notification plaintiffs actually received met the requirements of the clear and conspicuous standard laid out in Regulation Z." 485 F.3d at 18.[10]

The form used by Encore here tracks the model Notice of Right to Cancel as set forth in the appendix to Regulation Z. *Compare* Compl. at Ex. 1 *with* 12 C.F.R. Part 226, App. H, Form H-8. As noted, however, the space on the form for an alternate deadline was left blank. The questions presented are whether TILA grants an extended (that is, three-year) right to rescind when the lender (1) fails to specify the alternate deadline for rescission demands sent by mail or telegram, and (2) fails to make clear that Saturday is counted as a "business day" under TILA.

---

[9]  The case law is not uniform in that regard. *See Santos-Rodriguez*, 485 F.3d at 17 n.6 ("We do not follow the Seventh Circuit's view that 'TILA does not easily forgive "technical" errors.'") (rejecting *Handy v. Anchor Mortgage Corp.*, 464 F.3d 760, 764 (7th Cir. 2006)); *see also McKenna II*, 537 F. Supp. 2d at 290 ("Plaintiffs point to caselaw in other circuits taking a stricter, zero-tolerance approach when determining whether notice meets the TILA standard. . . . Reliance on [these cases] is misplaced because the First Circuit recently declined to follow the hyper--technical approach of these circuits."). Cases within the Circuit to the contrary appear to antedate the recent First Circuit developments. *See, e.g.*, *New Me. Nat'l Bank v. Gendron*, 780 F. Supp. 52, 57 (D. Me. 1991) ("Courts have imposed a standard of strict liability under the TILA where a lender has violated any of its provisions.").

[10] The First Circuit has noted that this approach is consistent with the legislative history of TILA and its amendments. *See McKenna I*, 475 F.3d at 424, 425 ("Congress [amended] TILA to provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations. In taking this step, Congress made clear that although it had designed the TILA to protect consumers, it had not intended that lenders would be made to face overwhelming liability for relatively minor violations."). *See also Santos-Rodriguez*, 485 F.3d at 17 & 17 n.6 (citing *McKenna I*).

For the reasons that follow, both arguments will be rejected, and the motion to dismiss will be granted.

### 1.    <u>Omission of Alternate Rescission Deadline</u>

Plaintiffs contend that TILA notices are required to contain a "firm rescission deadline" and that the lender's failure to specify a date certain in the blank provided for the alternate rescission deadline in the model form renders the notice defective.  (Pl. Opp. at 3, 4, 6).  That contention, however, is incorrect.

First, there simply is no statutory or regulatory requirement that lenders provide a "firm rescission deadline."  *See Melfi v. WMC Mortg. Corp.*, 2009 U.S. Dist. LEXIS 1454, at *5-*6 (D.R.I. Jan. 9, 2009).  The regulatory framework, in fact, does not lend itself to firm rescission deadlines:  "The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice [of right to rescind], or delivery of all material disclosures, *whichever occurs last*."  12 C.F.R. 226.23(a)(3) (emphasis added).[11]  This formula for calculating the rescission deadline has been incorporated into the model form under Regulation Z.

The fact that there is no requirement that lenders specify a firm rescission deadline is obvious from the statutorily prescribed method for determining those deadlines and from the text of the model form.  The lender has the option (although it is not required) to specify a firm

---

[11]  The relevant statutory language is as follows:  "[T]he obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.  The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section.  The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section."  15 U.S.C. § 1635(a).

rescission deadline for those borrowers who elect to give notice of rescission by mail or telegram. Where the lender chooses to supply such a date, the borrower must send any rescission notice by (1) a specific date filled in on the form, or (2) midnight on the third business day from the latest of the three relevant events.

It is up to the lender to specify a separate deadline if it wishes to do so; in any event, if the form is left blank, the subsequent parenthetical provides a simple formula for calculating the alternate date.  Indeed, the First Circuit has concluded that a form containing an alternate rescission deadline *that had already past* when the Notice was provided to the borrower was *not* objectively confusing.  *Palmer*, 465 F.3d at 29.  "The statement [containing the alternate rescission deadline] is followed immediately by a parenthetical reading '(or midnight of the third business day following the latest of the three (3) events listed above).'  We fail to see how any reasonably alert person—that is, the average consumer—reading the Notice would be drawn to the . . . deadline without also grasping the twice-repeated alternative deadlines."  *Id.*  If including an already-expired deadline is not objectively confusing, omitting the alternate deadline altogether should not result in a different outcome.

Moreover, certain critical dates are sometimes known *only* to the borrower—namely, the date on which the *borrower receives* the required TILA disclosure and the date on which the *borrower receives* the notice of right to cancel.  In those circumstances, only the borrower, not the lender, can calculate the deadline.  Any deadline calculated by the lender, presumably based on the date of transaction, would be overridden and thus made irrelevant.

This Court accordingly concludes that, as a matter of law, a hypothetical average consumer would not be confused by omission of the alternate rescission deadline for rescission

notices sent by mail or telegram.  *See Megitt v. Indymac Bank, F.S.B.*, 547 F. Supp. 2d 56, 61 (D.

Mass. 2008) ("Defendant's omission of the rescission deadlines from Plaintiffs' loan transactions

(indeed the only flaw Plaintiffs cite) were, at most, unactionable technical violations.").

### 2.        Counting "Business Days"

Plaintiffs also contend that an ordinary consumer would not know that Regulation Z

defines "business day" to include Saturdays, and thus would be confused about the actual

rescission deadline when a transaction takes place on Friday, as it did here.  That argument has

some common-sense appeal.  *See Aubin v. Residential Funding Co., LLC*, 565 F. Supp. 2d 392,

397 (D. Conn. 2008) ("[I]t would likely surprise the average person (it certainly surprised this

judge) to learn that 'Saturday' is included within TILA's definition of a 'business day.'"); *but see*

*Reynolds v. E-Loan, Inc.*, 2008 U.S. Dist. LEXIS 94844, at *18-*19 (D. Mass. Nov. 14, 2008)

("To be sure, compared with rules familiar to judges, which do not anticipate that courts will be

open on Saturdays, treating Saturday as a business day may seem unusual.  But given that banks,

the traditional financial institutions that extend credit on residences, are generally open on

Saturdays, it may not be so surprising that Regulation Z defines business days to include

Saturdays.") (internal citations omitted).  Nonetheless—and even assuming that an objectively

reasonable consumer would be confused—the argument must be rejected.

First, the statute provides that "[a] creditor or lessor shall be deemed to be in compliance

with the disclosure provisions of this title with respect to other than numerical disclosures if the

creditor or lessor . . . uses any appropriate model form . . . published by the Board" or an

adaption of the model form that "does not affect the substance, clarity, or meaningful sequence of

the disclosure."  15 U.S.C. § 1604(b).  Encore used the model form here, and there was no error

in numerical disclosure.[12]

Second, under the statute, rescission is not available as a remedy where the model form is

used.  The statute specifically provides:

> An obligor shall have no rescission rights arising solely from the form of written
> notice used by the creditor to inform the obligor of the rights of the obligor under
> this section, if the creditor provided the obligor the appropriate form of written
> notice published and adopted by the Board, or a comparable written notice of the
> rights of the obligor, that was properly completed by the creditor, and otherwise
> complied with all other requirements of this section regarding notice.

15 U.S.C. § 1635(h).  Use of a model form is, "at the very least, prima facie evidence of the

adequacy of the disclosure." *Palmer*, 465 F.3d at 29 (citing 12 C.F.R. § 226 Supp. I, Intro. para.

1 ("Good faith compliance with [the Federal Reserve Board's] commentary affords protection

from liability under [the TILA].")).[13]

It is true, of course, that Encore failed to specify an alternate rescission deadline, and thus

arguably the form was not "properly completed."  But even specification of an alternate rescission

deadline would not have reduced or affected any confusion caused by the designation of Saturday

as a "business day."  If the Notice of Right to Cancel is objectively confusing, it is because the

model form did not explain the term "business day," not because the space on the form was left

---

[12] In *Aubin*, the court suggests that "dates" may fall within the definition of "numerical disclosures," rendering the § 1604(b) presumption inapplicable in such a case. *Aubin*, 565 F. Supp. 2d at 398 n.6.  However, the fact that "business days" may need to be *counted* does not make the definition of "business days" a *numerical* disclosure.

[13] The regulation provides that in order "[t]o satisfy the disclosure requirements of paragraph (b)(1) of this section, *the creditor shall provide the appropriate model form in Appendix H* of this part or a substantially similar notice." 12 C.F.R. § 226.23(b)(2) (emphasis added).  Lenders are hardly encouraged under the circumstances to experiment with their own notice formulation.

blank.[14]

Plaintiffs' logic would allow rescission of all TILA loans within the statutory period where Saturdays were counted as business days for purposes of calculating the rescission deadline, but where borrowers were not specifically alerted to this fact.  This would affect all TILA transactions where the triggering event occurred on a Wednesday, Thursday, or Friday, or where intervening holidays (which are excluded from Regulation Z's definition of business days) affected the deadline.  Imposing such overwhelming liability under such circumstances is not required by the statute, and is illogical and unjust.

In summary, there is nothing in the statute, the regulations, or the model forms to suggest that lenders should alert the borrower to the fact that Saturdays will be counted as "business days."  By using the model forms, defendant is not subject to liability, and in particular is not subject to the remedy of rescission.  The complaint will therefore be dismissed.

### IV.    Conclusion

For the foregoing reasons, the motion of defendant Performance Credit Corporation to dismiss for failure to state a claim upon which relief can be granted is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: April 14, 2009

---

[14]   Defendant is also entitled to a safe harbor for the class claim for statutory damages under § 1640's good faith compliance provision:  "No provision of this section . . . imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board . . . ." 15 U.S.C. § 1640(f).